## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA** for the use and benefit of **J.A. MANNING CONSTRUCTION CO., INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**BRONZE OAK, LLC, and MID-CONTINENT CASUALTY COMPANY,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 16-CV-0588-CVE-FHM** |

## OPINION AND ORDER

Now before the Court is Defendants Bronze Oak, LLC and Mid-Continent Casualty Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Brief in Support (Dkt. # 13). Defendants argue that the Court lacks subject matter jurisdiction over this suit. Dkt. # 13, at 1. Plaintiff asserts that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the construction project in question is a public works project subject to the Miller Act, 40 U.S.C. § 3131, et seq. Dkt. # 19, at 7. Plaintiff also asserts the Court has jurisdiction under 28 U.S.C. § 1352 because the bond at issue was executed under a law of the United States. Id. at 12. Alternatively, plaintiff asks the Court to strike defendant's motion because it is untimely. Id. at 11.

### I.

Under the tribal transportation program, the Secretary of Transportation and Secretary of the Interior are authorized to make funds available to Indian tribal governments to pay the costs of certain transportation projects, including transportation projects that are located in, or that provide

access to, tribal land, or are associated with a tribal government. See 23 U.S.C. § 202(a). Pursuant to § 202,[1] the United States Department of Transportation (DOT) entered into an agreement with the Cherokee Nation (Nation) authorizing the Nation to "perform the planning, research, design, engineering, construction, and maintenance of highway, road, bridge, parkway, or transit facility programs or projects that are located on or which provide access to the Cherokee Nation Reservation or a community of the Nation and are eligible for funding pursuant to 25 CFR Part 170"[2] (DOT Agreement). Dkt. # 28-1, at 1-2. Under the DOT Agreement, the DOT would provide the Nation with an annual lump sum of funding in accordance with § 202, which the Nation would use to fund transportation projects as permitted in § 202 and 25 C.F.R. § 170. Id. at 3-4. As required under 25 C.F.R. § 170, the Nation agreed to prepare a final construction report on each completed project for the DOT, make project sites available to Federal Highway Administration (FHWA) officials with reasonable advance written notice on a monthly basis or at critical project milestones, and provide the DOT with a copy of its annual single agency audit report and semi-annual progress reports and financial status reports. Id. at 12. The DOT Agreement also states that the DOT will conduct a "final project inspection jointly with the Nation and facility owner." Id. at 14.

On May 5, 2014, the Nation issued a bid notice for the construction of a bridge and adjoining roadway in Mayes County, Oklahoma (project), which it planned to fund with money the Nation received under the DOT Agreement. Dkt. # 19-2, at 2-3. The bid notice explains that "[t]he

---

[1]   Section 202 was amended in 2012. The agreement at issue was entered into in 2009 pursuant to an earlier version of the statute. However, the subsection under which the agreement was originally signed, § 202(d)(5), remains substantially unchanged in the current statute at § 202(b)(7).

[2]   25 C.F.R. § 170 contains the Bureau of Indian Affairs and Department of the Interior regulations regarding the tribal transportation program authorized in 23 U.S.C. § 202.

2

Cherokee Nation has a Tribal Transportation Program Agreement with the United States Department of Transportation. The Cherokee Nation receives Federal Highway Administration (FHWA) funding for road construction and road rehabilitation projects in accordance with that agreement." Id. at 2. Bronze Oak, LLC submitted a bid proposal and was hired as the general contractor for the project. Dkt. # 19-2, at 10-20. The bid proposal contained a clause stating that the bid proposal and any resulting contract would be construed under the laws of the United States and the Nation. Id. at 10. Bronze Oak hired J.A. Manning Construction Company, Inc. (JAMCC) as a subcontractor to supply labor and materials to the project. Dkt. # 19-4. A payment bond was issued in conjunction with the project. Dkt. # 19-1. The payment bond lists Bronze Oak as the principal, Mid-Continent as surety, and the United States of America as obligee. Id. at 1 ("We, the Principal and Surety(ies), are firmly bound to the United States of America . . . in the above penal sum."). The payment bond states that it is "for the protection of persons supplying labor and materials" pursuant to the Miller Act. Id. at 2. In September 2014, the Nation and Mayes County (County) entered into a memorandum of agreement (MOA), under which the County agreed to assume responsibility for the construction and maintenance of the project and the Nation agreed to pay the agreed upon amount to the County upon completion of the project. Dkt. # 19-3, at 1. The MOA states that it "shall be governed by, construed, and enforced in accordance with the laws of the United States and where applicable, the laws of the [Nation]." Id. at 2.

Plaintiff alleges that Bronze Oak failed to pay $184,343.95 it owes JAMCC for work performed under the subcontract. Dkt. # 2, at 2. Plaintiff filed suit in this Court on three counts: (1) breach of contract against Bronze Oak, (2) quantum meruit and/or unjust enrichment against Bronze Oak, and (3) an in rem claim against the payment bond. Id. at 2-4. Defendants now ask the Court

to dismiss plaintiff's suit because the Court lacks subject matter jurisdiction. Dkt. # 13, at 1. Plaintiff responds that the Court has federal question jurisdiction because the project is a public works project subject to the Miller Act and the bond issued was executed under a law of the United States. Dkt. # 19, at 7, 12. Alternatively, plaintiff asserts that the Court should strike defendant's motion because it was filed one day late. Id. at 11.

## II.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005). When, as here, a motion to dismiss challenges the facts upon which subject matter jurisdiction depends, "a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citation omitted).

## III.

Defendants move to dismiss this suit under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Plaintiff asserts that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the project is a public works project subject to the Miller Act. Dkt. # 19, at 7. Plaintiff also asserts the Court has jurisdiction under 28 U.S.C. § 1352 because the bond at issue was executed under a law of the United States. Id. at 12. Alternatively, plaintiff asks the Court to strike defendant's motion because it is untimely. Id. at 11.

4

**A.**

The Court first considers the applicability of the Miller Act. The Miller Act requires a general contractor to furnish a payment bond with a surety "for the protection of all persons supplying labor and material" before a contract of more than $100,000 may be awarded for the "construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. § 3131. The purpose of the Miller Act is to protect persons supplying labor and material for the construction of federal projects in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. United States ex rel Sherman v. Carter, 353 U.S. 210, 216 (1957); United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1205 (9th Cir. 2002). The Miller Act provides that any person who has furnished labor or material in carrying out work provided for in a contract subject to the Act, and who has not been paid in full within 90 days of last supplying labor or material, may bring a civil action on the payment bond for the amount unpaid. 40 U.S.C. § 3133(b). "The Miller Act . . . is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." Sherman, 353 U.S. at 216.

Whether plaintiff may bring a suit under the Miller Act depends on whether the project is a "public work of the Federal Government." The statute itself gives no guidance in interpreting the phrase. See United States ex rel. Noland Co. v. Irwin, 316 U.S. 23, 28 (1942). While there is no clear definition or test for classifying a project a "public work of the Federal Government," courts often look to the following factors: "whether the United States is a contracting party, an obligee to the bond, an initiator or ultimate operator of the project; whether the work is done on property belonging

to the United States; or whether the bonds are issued under the Miller Act." <u>Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.</u>, 135 F.3d 671, 675 (9th Cir. 1998). Here, on the one hand, the United States is not a contracting party[3] or an initiator or ultimate operator of the project, and the work was not done on federal land. On the other hand, the United States is obligee of the payment bond, and the bond was issued under the Miller Act. Additionally, the Nation funded the project with money it received from the federal government pursuant to § 202, and the DOT retained some control over the project by requiring semi-annual reports on, and occasional access to for inspections of, all § 202 projects.

Defendants argue that the Court should look to <u>United States ex rel. Miles Lumber Co. v. Harrison & Grimshaw Construction Co.</u>, 305 F.2d 363 (10th Cir. 1962), in which the Tenth Circuit held that a military housing project constructed pursuant to the Capehart Act was not a public work under the Miller Act. Dkt. # 13, at 6. <u>Harrison</u> involved a military housing project built by private entities with private funds advanced on the security of mortgages guaranteed by the Federal Housing Administration. <u>Harrison</u>, 305 F.2d at 365. Moreover, the payment bond named as obligees the mortgagor-builder and the mortgagee-lender. <u>Id.</u> The court found that "[t]he eventuality that title will vest in the United States does not make the project a public work." <u>Id.</u> at 367. In its reasoning, the court distinguished several cases because they "all involved federal court jurisdiction," which was not at issue in <u>Harrison</u>. <u>Id.</u> at 366. <u>Harrison</u> provides little guidance in this case because the federal government's relationship to projects built under the Capehart Act is very different from its relationship to § 202 projects. <u>Harrison</u> concerns a project to which title would eventually vest in

---

[3]     The United States is a third-party beneficiary to the contract, but its relationship to the project is slight in that it holds only auditing and inspection powers.

the United States. This case involves a project to which the United States will never have title, but the United States funded the project, is obligee of the payment bond, and retained auditing and inspection power.

Defendants also rely on several cases holding that federal funding is not enough for a project to fall under the Miller Act. Dkt. # 13, at 7-9 (citing United States ex rel. Kelly's Tile & Supply Co. v. Gordon, 468 F.2d 617 (5th Cir. 1972); Hutto Concrete Co. V. Magna Bldg. Corp., 305 F. Supp. 1244 (S.D. Ga. 1969); Westinghouse Elec. Supply Co. v. B. L. Allen, Inc., 380 A.2d 62 (Vt. 1977)). Plaintiff does not dispute that federal funding alone is not sufficient to confer jurisdiction under the Miller Act. Dkt. # 19, at 10. However, this case involves stronger ties to the federal government than simply funding, and therefore the funding-only bright-line rule is inapplicable.

Plaintiff also relies on cases providing limited guidance in this matter. In Noland, the Supreme Court held that a library built for a private university was a public work. 316 U.S. at 30. The Secretary of the Interior approved and authorized funding for the building of the library pursuant to the National Industrial Recovery Act (Recovery Act) and entered into a contract, on behalf of the United States, with a general contractor to build the library. Id. at 26. To determine whether the library was a public work, the Court looked to the definition found in the Recovery Act. Id. at 28. In interpreting Noland, federal courts have found its definition of public work to be limited to projects promulgated under the Recovery Act. See United States ex rel. Gen. Elec. Supply Co. v. U.S. Fidelity & Guar. Co., 11 F.3d 577 (6th Cir. 1993). Thus, Noland is of limited applicability here because it involved a project specifically funded by the federal government and a contract to which the United States was a party, and was analyzed under a definition of public work that does not apply outside the Recovery Act.

Plaintiff also cites to <u>United States ex rel. Motta v. Able Bituminous Contractors, Inc.</u>, 640 F. Supp. 69 (D. Mass. 1986), which is similar to this case, but differs in one key aspect: the United States was a party to the contract. <u>Id.</u> at 70 ("Plaintiffs' allegations that Able entered into a written contract with the United States for construction on an interstate highway in the Commonwealth and that Able and Peerless executed a bond in accordance with the provisions of the Miller Act suffice to establish that a public work of the United States is at issue."). Although many factors are considered in determining whether a project is a public work, courts have generally found whether the United States is a contracting party to be particularly important. <u>See, e.g.</u>, <u>United States v. TK Elec. Serv., LLC</u>, No. 1:09-CV-00041, 2011 WL 379192, at *1 (S.D. Ohio Feb. 3, 2011) (finding the Miller Act inapplicable because the United States was not a party to the contract); <u>United States ex rel. Roc Carter Co., LLC v. Freedom Demolition, Inc.</u>, No. 5:09-CV-101, 2009 WL 3418196, at *3 (M.D. Ga. Oct. 14, 2009) (finding that in order for a project to be a public work: "(1) there must be a construction contract; (2) the United States must be a party to the construction contract; and (3) the contract must require that bonds be secured that run in favor of the United States"); <u>United States ex rel. Miller v. Mattingly Bridge Co.</u>, 344 F. Supp. 459, 462 (W.D. Ky. 1972) ("The wording of [the Miller Act], indicates strongly that Congress in using the word 'contracts' had in mind only contracts between the United States and prime contractors, and not contracts to which the United States was not a party.").

This case falls in between most of the case law on the applicability of the Miller Act, but in considering the entirety of the circumstances, the federal government's relationship to the project is not strong enough to classify the project as a "public work of the Federal Government." The project was funded by the federal government through a program that gives tribes an annual lump

8

sum to carry out transportation projects. Although the federal government puts restrictions on the types of projects the tribes can fund with the money and retains minimal oversight, § 202 is a piece of a larger federal policy aimed at giving tribes more autonomy in deciding where to prioritize funding. See 25 U.S.C. § 5301 ("Congress . . . finds that . . . the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities . . . and has denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians which are responsive to the true needs of Indian communities."). The United States is the obligee of the payment bond, but even with federal funding of the project, this is not enough to bring the project under the Miller Act. The project is owned and maintained by the County and is not on federal land. The Nation initiated the project, and the federal government is not a contracting party. Finally, agreements among the contracting parties that federal law will apply does not transform a project that does not fall under the Miller Act into one that does. "Federal subject matter jurisdiction cannot be consented to or waived." Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation, 770 F.3d 944, 947 (10th Cir. 2014) (quoting Firstenberg v. City of Santa Fe, N.M., 696 F.3d 1018, 1022 (10th Cir. 2012)). Thus, the project is not a "public work of the Federal Government," and the Court does not have federal question jurisdiction on the basis of the Miller Act.

### B.

The Court next considers whether 28 U.S.C. § 1352 confers subject matter jurisdiction in this case. Section 1352 grants district courts "original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States." Plaintiff argues that the payment bond was executed under a law of the United States because Bureau of Indian Affairs (BIA)

regulations required a bond in this case. Dkt. # 19, at 12-13. Section 202 requires that "all funds made available for the construction and improvement of tribal transportation facilities shall be administered in conformity with regulations and agreements jointly approved by the Secretary [of Transportation] and the Secretary of the Interior." 23 U.S.C. § 202(a)(5). BIA regulations require a payment bond when the recipient of a "Bureau grant" requires contracting for construction or a facility improvement that exceeds $100,000. 25 C.F.R. § 276.4. Thus, whether Bronze Oak was required to execute a payment bond under 25 C.F.R. § 276.4 depends on whether the funding in this case is a "Bureau grant."

Plaintiff argues that § 202(a)(8)(B)(i) shows that the BIA is in control of § 202 funding. The subsection states that the BIA "shall retain primary responsibility, including annual funding request responsibility, for Bureau of Indian Affairs road maintenance programs on Indian reservations." 23 § 202(a)(8)(B)(i). There are several problems with plaintiff's argument. First, § 202(a)(8)(B)(i) is contained in a subsection dealing exclusively with road <u>maintenance</u>, and the project was for the <u>construction</u> of a bridge and accompanying road. Second, § 202(a)(8)(B)(i) refers specifically to the BIA's road maintenance programs <u>on Indian reservations</u>, and this project is on county, not tribal, land. Third, the subsequent subsection makes clear that the BIA road maintenance programs referred to in § 202(a)(8)(B)(i) are not the same as the general § 202 tribal transportation program. Section 202(a)(8)(B)(ii) states that "[t]he Secretary of the Interior shall ensure that funding made available under this subsection for maintenance of tribal transportation facilities for each fiscal year is supplementary to, and not in lieu of, any obligation of funds by the Bureau of Indian Affairs for road maintenance programs on Indian reservations." 23 U.S.C. § 202(a)(8)(B)(ii).

Further, the BIA's regulations do not contain a definition of "Bureau grant," but the plain, common sense meaning is funding granted by the BIA. Plaintiff has presented evidence that the funding for the project came from the FHWA, a division of the DOT, pursuant to § 202. Section 202 is contained in Title 23, titled "Highways," and jointly grants the Secretary of Transportation and the Secretary of the Interior the authority to administer funds for the tribal transportation program. The DOT Agreement is between the Nation and the DOT, and all federal oversight agreed to in the DOT Agreement is to be exercised by the DOT. Thus, all the evidence presented by plaintiff indicates that funding for the project came from the DOT, not the BIA. Plaintiff has failed to establish that the project was a "Bureau grant," and therefore the Court cannot exercise jurisdiction under 28 U.S.C. § 1352 on the basis of the bond requirement contained in 25 C.F.R. § 276.4.

## C.

The Court now considers plaintiff's argument that the Court should strike defendants' motion to dismiss because defendants failed to timely file a responsive pleading to the complaint. Dkt. # 19, at 11. "A defendant must serve an answer within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Plaintiff asserts that both defendants were served on September 12, 2016. Dkt. ## 9, 10, 19. Defendants' motion to dismiss was filed on October 4, 2016, 22 days after service of process.

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in litigation.'" 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)). The issue has been fully briefed by both parties and

the Court has an obligation to ensure it has subject matter jurisdiction regardless of whether a party raises the issue. Thus, the Court will not strike defendants' motion to dismiss for lack of subject matter jurisdiction because it was one day late.

**IT IS THEREFORE ORDERED** that Defendants Bronze Oak, LLC and Mid-Continent Casualty Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Brief in Support (Dkt. # 13) is **granted**.

**DATED** this 17th day of January, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE